| UNITED STATES DISTRICT COURT | | **NOT FOR PUBLICATION** |
|---|---|---|
| EASTERN DISTRICT OF NEW YORK | | |
| ---------------------------------------------------------------------X | | |
| LOIS ROSENBLATT in her capacity as Public Administrator of Queens County as the Administrator for the Estate of BLANCA AZUCENA MONZON MALDONADO, a/k/a BLANCA AZUCENA MONZON, Deceased, | : : : : : : | |
| Plaintiff, | : : | **MEMORANDUM & ORDER** |
| - against - | : : | No. 11-CV-1106 (ERK) (CLP) |
| ST. JOHN'S EPISCOPAL HOSPITAL, UNITED STATES OF AMERICA, "JOHN DOE" M.D., and "JANE DOE" M.D., | : : : : : | |
| Defendants. | : | |
| ---------------------------------------------------------------------X | | |

KORMAN, J.:

On December 17, 2010, the plaintiff filed a wrongful death medical malpractice action in the Supreme Court of the State of New York, County of Queens, naming as defendants St. John's Episcopal Hospital ("St. John's"), Monzila Rahman, M.D. ("Dr. Rahman"), and John and Jane Doe, M.D. (collectively "the defendants"). (Compl.)

The plaintiff, Lois Rosenblatt, is the administrator for the estate of Blanca Azucena Monzon Maldonado a/k/a Blanca Azucena Monzon ("Monzon"). (*Id.* ¶ 1.) St. John's, located in Far Rockaway, Queens, is the hospital where Monzon gave birth to a baby girl on December 22, 2008. (*Id.* ¶¶ 41, 42; Discharge Summ.) Dr. Rahman is a physician licensed to practice obstetrics and gynecology in New York; she treated Monzon from December 22 to 23, 2008. (Compl. ¶¶ 43, 45; Discharge Summ.; Rahman Decl. ¶ 1; Med. Billing Decl. ¶ 1.) And John and Jane Doe are medical providers at St. John's who treated Monzon in connection with the delivery of her baby. (Compl. ¶¶ 44, 46; Pl.'s Mem. of Law 1.)

1

The complaint alleges that, from December 22 to 23, 2008, the defendants were negligent, reckless, and careless in treating Monzon, and are thus guilty of medical malpractice, and that such malpractice ultimately resulted in Monzon's death. (Compl. ¶¶ 43, 45, 47, 49-50.) The complaint also alleges that the defendants failed to disclose to Monzon the alternatives to and risks of the treatment Monzon received—namely, a Caesarian section—and that, by failing to do so, they failed to procure Monzon's informed consent. (*Id.* ¶ 53.) Lastly, the complaint asserts a claim for wrongful death. (*Id.* ¶ 57.) The plaintiff seeks money damages for all three causes of action. (*Id.* ¶¶ 51, 54, 58.)

On March 8, 2011, the United States removed the action to this Court pursuant to 28 U.S.C. §§ 1441(a), 1442(a)(1), 2679(d)(2). (Notice of Removal ¶ 5.) Although the complaint does not name the United States as a defendant, the United States substituted itself as a party defendant in the place of Dr. Rahman, pursuant to 28 U.S.C. § 2679(d)(2) and 42 U.S.C. § 233(a), (c), (g). (*Id.* ¶ 7.) This removal and substitution was based on the certification of Assistant United States Attorney James R. Cho, made on behalf of the Attorney General, that, at the time of the incident from which the plaintiff's claim arose, Dr. Rahman was acting within the course and scope of her federal employment as an employee of the Joseph P. Addabbo Family Health Center (the "Center"), a recipient of grant funds from the United States Department of Health and Human Services ("HHS").[1] (*Id.*; 3/8/2011 Certif.) As is customary, the certification gave no reasons for this determination.[2] *See Osborn v. Haley*, 549 U.S. 225, 233 (2007).

---

[1] The federal regulations provide that "[t]he United States Attorney for the district where the civil action or proceeding is brought . . . is authorized to make the statutory certification that the Federal employee was acting within the scope of his office or employment with the Federal Government at the time of the incident out of which the suit arose." 28 C.F.R. § 15.4(a).

[2] The certification provided in full:

> By virtue of the authority vested in this Office by the Attorney General under 28 C.F.R. § 15.3, it is hereby certified that, pursuant to 42 U.S.C. § 233(g), Defendant Monzila Rahman, M.D. ("Rahman"), was acting within the course and scope of her federal employment as an employee of

In its notice of removal, the government asserted that, as an employee of a federally funded clinic, Dr. Rahman is a federal employee entitled to the protections of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2401(b), 2671-2680. (Notice of Removal ¶ 3.) In support of this assertion, the government attached the declaration of Meredith Torres ("Torres"), a Senior Attorney with HHS. (3/8/2011 Torres Decl. ¶ 1.) In her declaration, Torres stated that, after reviewing official HHS records, she determined that the Center was deemed eligible for FTCA malpractice coverage effective January 1, 2007, and that such coverage continued without interruption until at least March 8, 2011. (*See id.* ¶ 2; 2/8/2011 Torres Decl. ¶ 5.) Torres also stated that, at all times relevant to the complaint, Dr. Rahman was an employee of the Center and that, as such, had been deemed to be an "employee of the United States" for purposes of medical malpractice coverage, pursuant to the Public Health Service Act ("PHSA"), as amended by the Federally Supported Health Centers Assistance Act, 42 U.S.C. § 233(g)-(n). (3/8/2011 Torres Decl. ¶ 3; 2/8/2011 Torres Decl. ¶ 6.) Torres concluded that Dr. Rahman is thus covered by the FTCA and entitled to all the protections thereof. (3/8/2011 Torres Decl. ¶ 3.)

On April 4, 2011, the plaintiff moved to remand the case to the New York Supreme Court, County of Queens, pursuant to 28 U.S.C. § 1447(c). (Pl.'s Mem. of Law 4.) The plaintiff seeks to have the case remanded on the ground that Dr. Rahman was not acting within the scope of her employment as a federal employee when she provided obstetric services to Monzon at St. John's on December 22 and 23, 2008. (*Id.*) In the plaintiff's view, at the time Monzon's baby was delivered at St. John's, Dr. Rahman was "either an attending physician or employed by the

---

the Joseph P. Addabbo Family Health Center (the "Center"), grantee of the U.S. Department of Health and Human Services, at the time of the incident over which the above-referenced action arose.
  Accordingly, the United States of America is hereby substituted as a party defendant pursuant to 42 U.S.C. §§ 233(a), (c), (g), and 28 U.S.C. § 2679(d)(2) for Defendant Rahman.

(3/8/2011 Certif.)

3

hospital."[3] (*Id.* at 1.) The plaintiff submits that, based on the "bare bones assertions" in the government's notice of removal and in Torres's declaration, "there is an inadequate showing indicating [that] the requisite control was exercised [by the Center] over the physician in this case [i.e., Dr. Rahman] to constitute her having been a federal agent at the time of the surgical delivery by Caesarean Section at the St. Johns [sic] Episcopal Hospital in Far Rockaway, New York." (*Id.* at 2.) The plaintiff also asserts that, even if Dr. Rahman were a federal employee, the government has failed to show that such employment was connected to her activities at St. John's. (*Id.*) In other words, the plaintiff argues that, when Dr. Rahman delivered Monzon's baby at St. John's, she was not acting within the scope of her federal employment. (*See id.*; Pl.'s Opp. & Reply 1.) In the alternative, the plaintiff seeks the dismissal of her malpractice claims against Dr. Rahman without prejudice to her filing an administrative claim within 60 days of the dismissal and to her commencing a lawsuit within six months of the denial of her administrative claim, pursuant to 28 U.S.C. § 2679(d)(5). (Pl.'s Mem. of Law 3-5.)

Shortly thereafter, on April 12, 2011, the government moved to dismiss without prejudice the plaintiff's FTCA claims against the United States, pursuant to Fed. R. Civ. P. 12(b)(1), and to remand the remaining claims to the New York Supreme Court, County of Queens. (Govt.'s Mem. of Law 1.) In its motion, the government argues that this Court lacks subject matter jurisdiction over the claims against the United States because the plaintiff failed to exhaust her administrative remedies before filing this suit, as required by 28 U.S.C. § 2675. (*Id.*) Specifically, the government faults the plaintiff for not having first filed an administrative tort claim with HHS. (*Id.*)

---

[3] In her complaint, the plaintiff similarly alleged that, at all relevant times, Dr. Rahman "was a physician employed by Defendant ST. JOHN'S EPISCOPAL HOSPITAL." (Compl. ¶ 24.) Indeed, the complaint makes no mention of the Center at all. (*See* Rosenberg Affirm. ¶¶ 3, 11.)

4

# FACTS[4]

On December 22, 2008, Monzon, a 17-year-old immigrant mother from Guatemala who was 40 weeks pregnant, went to St. John's to give birth to her second child. (Inpatient Admiss. Form; Reyes Aff. ¶ 1; Rahman Decl. ¶ 2.) Dr. Rahman was the attending physician who treated Monzon at the hospital both during and after the delivery. (Inpatient Admiss. Form; Reyes Aff. ¶ 4.) Although Monzon went to St. John's to give birth, she had received prenatal, outpatient care at the Center from Dr. Rahman's colleague, Dr. Rosita Ulep. (Rahman Decl. ¶ 3; Discharge Summ.; Prenatal Flow Rcd.; Reyes Aff. ¶ 1.)

Dr. Rahman had been employed by the Center since February 4, 2008. (Rahman Decl. ¶ 1; Med. Billing Decl. ¶ 2.) She admitted Monzon to St. John's, however, because Monzon was a patient of the Center, and Dr. Rahman was the Center physician on call at St. John's when Monzon arrived at the hospital. (Rahman Decl. ¶ 5.) Patients of the Center do not have their babies delivered at the Center because it is an outpatient clinic without the resources or equipment necessary to handle deliveries. (Rahman Decl. ¶ 4; Chan Decl. ¶ 2.) Instead, Center patients have their babies delivered at outside facilities, such as St. John's. (Rahman Decl. ¶ 4; Chan Decl. ¶ 2.) Dr. Rahman had full admitting privileges at St. John's, and her association with the hospital allowed her to provide treatment to Center patients that they could not have received at the Center. (Rahman Decl. ¶¶ 9-10; Chan Decl. ¶ 5.) Nevertheless, Dr. Rahman has never been an employee of St. John's nor has she ever received any compensation from St. John's, including for the services she provided Monzon. (Rahman Decl. ¶¶ 9, 11.) Indeed, for her treatment of Monzon, Dr. Rahman only received the regular compensation she gets from the Center. (Med. Billing Decl. ¶ 4.) As Dr. Rahman and Dr. Alfonso Yu Chan, the Center's

---

[4] Because the government's motion to dismiss is brought under Rule 12(b)(1), rather than Rule 12(b)(6), I can consider evidence beyond the pleadings without converting this motion into one for summary judgment. *See Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n.8 (2d Cir. 2006).

Medical Director, explained, all of the treatment Dr. Rahman provided to Monzon at St. John's was provided in her capacity as an employee of the Center, and not as an employee of St. John's. (Rahman Decl. ¶ 8; Chan Decl. ¶¶ 1, 4.)

According to the discharge summary, Dr. Rahman discussed with Monzon and her family members the complications that could arise if the baby were delivered vaginally because of the baby's large size. (Discharge Summ.) In this light, Monzon and her family members agreed to go through with a Caesarian section. (Discharge Summ.; Rahman Decl. ¶ 5.) Dr. Rahman performed the Caesarian section without complications, and at 9:23 p.m. on December 22, 2008, Monzon gave birth to a baby girl. (Discharge Summ.; Birth Certif.; Rahman Decl. ¶ 6.)

An hour after the baby's birth, Monzon was moved to the recovery room, where she remained stable. (Discharge Summ.) But at 11:38 p.m., a nurse heard Monzon moaning, and, upon examination, it appeared that Monzon was having a seizure and had lost consciousness. (Discharge Summ.; Rahman Decl. ¶ 7.) Monzon also began to bleed vaginally. (Discharge Summ.) Efforts were made to stabilize Monzon, but it was ultimately determined that she was not responding and that such efforts were futile. (Discharge Summ.) Monzon was pronounced dead at 12:44 a.m. on December 23, 2008. (Discharge Summ.; Death Certif.) The autopsy report states that the cause of death was saddle pulmonary thromboembolism.[5] (Rosenberg Affirm. ¶ 5.)

---

[5] More specifically, the cause of death was determined to be "saddle pulmonary thromboembolism due to deep vein thromboses of lower extremities complicating full term intrauterine pregnancy with fetal macrosomia (status post Cesarian section)." (Autopsy Rpt.)

**DISCUSSION**

**I. The FTCA's Applicability**

The FTCA operates as a limited waiver of the United States's sovereign immunity for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). "The FTCA's purpose is both to allow recovery by people injured by federal employees or by agents of the Federal Government, and, at the same time, to immunize such employees and agents from liability for negligent or wrongful acts done in the scope of their employment." *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 80 (2d Cir. 2005). The remedy against the United States provided by the FTCA is exclusive of any other civil action against the individual defendant. 28 U.S.C. § 2679(b)(1); *see also McHugh v. Univ. of Vt.*, 966 F.2d 67, 70 (2d Cir. 1992), *abrogated on other grounds by Osborn*, 549 U.S. 225.

Thus, for the government to be liable for an individual defendant's conduct, (1) that individual must be an "employee of the Government" as that term is used in the FTCA, and (2) he must have been "acting within the scope of his office or employment" when the alleged tort occurred. *See* 28 U.S.C. § 1346(b)(1). The FTCA defines "employee of the Government" as "officers or employees of any federal agency . . . and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation." 28 U.S.C. § 2671. The FTCA makes clear, however, that independent contractors are excluded from this definition. *See B & A Marine Co. v. Am. Foreign Shipping Co.*, 23 F.3d 709, 713 (2d Cir. 1994) ("[T]he FTCA explicitly excludes

liability of the Government for the wrongful act or omission of an independent contractor."); *United States v. Orleans*, 425 U.S. 807, 814 (1976). And whether an individual is a federal employee or an independent contractor is a matter of federal law. *Leone v. United States*, 910 F.2d 46, 49 (2d Cir. 1990).

More specifically, however, under the PHSA, 42 U.S.C. § 201 *et seq.*, as amended by the Federally Supported Health Centers Assistance Act of 1995, 42 U.S.C. § 233(g)-(n), the remedy against the United States provided by the FTCA is the exclusive remedy for medical malpractice claims brought against Public Health Service ("PHS") employees for conduct committed while acting within the scope of their employment. 42 U.S.C. § 233(a) (stating that the remedy provided by the FTCA "for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions . . . by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action" against the individual defendant); *see also Hui v. Castaneda*, 130 S. Ct. 1845, 1848 (2010); *Cuoco v. Moritsugu*, 222 F.3d 99, 107 (2d Cir. 2000). An "employee of the Public Health Service" is an "entity receiving Federal funds under [42 U.S.C. § 254b]" and "any officer, governing board member, or employee of such an entity, and any contractor of such an entity who is a physician or other licensed or certified health care practitioner." 42 U.S.C. § 233(g)(1)(A), (4). "Pursuant to 42 U.S.C. § 233(g), HHS is authorized to 'deem' federally funded health centers to be employees of the Public Health Service" and "[a]ny suit filed against an entity so deemed must be asserted pursuant to the FTCA." *A.Q.C. ex rel. Castillo v. Bronx-Lebanon Hosp. Ctr.*, No. 11 Civ. 2656, 2012 WL 170902, at *3 (S.D.N.Y. Jan. 20, 2012) (citing 42 U.S.C. § 233(a)). And once HHS deems an entity or individual a Public Health Service employee, this determination "shall be final and

binding upon the Secretary and the Attorney General and other parties to any civil action or proceeding." 42 U.S.C. § 233(g)(1)(F).

Although Monzon and Alexander Reyes ("Reyes"), the father of Monzon's baby girl, may not have known it at the time Monzon gave birth, the Center was a federally funded health center, and HHS had "deemed" it to be an "employee of the Public Health Service"—a designation the Center continued to hold in December 2008 when Monzon gave birth.[6] (*See* HHS Deeming Letters, attached as Ex. 1 to 4/12/2011 Cho Decl.)[7] As a result, both the Center and its employees are immune from medical malpractice claims, and the FTCA is the exclusive remedy for these lawsuits. I now turn to the plaintiff's argument that Dr. Rahman was not an employee of the Center who was acting within the scope of her employment when she treated Monzon.

### A. Federal Employee Status

In determining whether an individual is a government employee or an independent contractor, the Supreme Court has instructed that a "critical element" is "the power of the Federal Government 'to control the detailed physical performance of the [individual].'" *Orleans*,

---

[6] According to Reyes, neither he nor Monzon knew or were ever informed that the Center was a federally financed institution. (Reyes Aff. ¶ 1.) Reyes explained that he and Monzon were immigrants from Guatemala with only a grade school education and that they were not fluent in English. (*Id.* ¶¶ 1, 11.) Reyes and Monzon believed that St. John's was a private hospital and that Dr. Rahman was working as an employee of that hospital when she delivered their baby girl. (*Id.* ¶¶ 7, 10.) No one had ever informed them that St. John's was in any way connected with federal funding. (*Id.* ¶ 8.)

[7] Specifically, the first paragraph of each of these three deeming letters provides:

> The Health Resources and Services Administration (HRSA) in accordance with Section 244(g) of the Public Health Service (PHS) Act, 42 U.S.C. §233(g), as amended by the Federally Supported Health Centers Assistance Act of 1995 (FSHCAA), (P.L. 104-73), deems the above named entity to be an employee of the PHS, for the purposes of section 224, effective January 1, [2007, 2008, and 2009]. Section 224(a) provides liability protection under the Federal Tort Claims Act (FTCA) for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, and related functions and is exclusive of any other civil action or proceeding.

(HHS Deeming Letters, attached as Ex. 1 to 4/12/2011 Cho Decl.)

425 U.S. at 814 (quoting *Logue v. United States*, 412 U.S. 521, 528 (1973)). In other words, the question is "whether [the individual's] day-to-day operations are supervised by the Federal Government." *Id.* at 815; *see also Leone*, 910 F.2d at 50. This inquiry is known as the strict control test. *Leone*, 910 F.2d at 49.

"The circuits have consistently held that physicians either in private practice or associated with an organization under contract to provide medical services to facilities operated by the federal government are independent contractors, and not employees of the government for FTCA purposes." *Fan ex rel. Zu Hua Chen v. United States*, No. 04 Civ. 9540, 2007 WL 1032304, at *13 (S.D.N.Y. Apr. 3, 2007) (quoting *Robb v. United States*, 80 F.3d 884, 890 (4th Cir. 1996)). In *Fan*, 2007 WL 1032304, the district court determined that the physician the plaintiff had sued was not an employee of a community health center that had been deemed a PHS employee in part because she was an employee of New York University and was not directly compensated by the health center. *Id.* at *14.

Here, it is beyond dispute that Dr. Rahman is an employee of the Center, and thus a federal employee for purposes of the FTCA. Unlike the physician in *Fan*, Dr. Rahman is directly employed by the Center and receives compensation directly from the Center. (*See* Med. Billing Decl. ¶¶ 2, 4; Rahman Decl. ¶¶ 1, 8; Chan Decl. ¶¶ 3, 4, 8.) The plaintiff here points to no evidence tending to show that Dr. Rahman is employed by another entity apart from the Center, nor does she allege that Dr. Rahman receives compensation from an entity other than the Center. At most, the plaintiff alleges that Monzon and Reyes believed Dr. Rahman was employed by St. John's—a fact that is irrelevant to the question of whether Dr. Rahman is a federal employee. Because Dr. Rahman was an employee of the Center, which had been deemed a PHS employee, she herself was also a PHS employee entitled to the protections of the FTCA.

### B. Scope of Employment

Having determined that Dr. Rahman was a PHS employee at the time she treated Monzon at St. John's, I next address whether she was acting within the scope of her federal employment at the relevant time. It is well established that, when a federal employee—and more specifically, a PHS employee—is sued for tortious conduct, the Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act, "empowers the Attorney General[, or one of his designees,] to certify that the employee 'was acting within the scope of his office or employment at the time of the incident out of which the claim arose.'" *Osborn*, 549 U.S. at 229-30 (quoting 28 U.S.C. § 2679(d)(1), (2)); 42 U.S.C. § 233(c); *see also Celestine*, 403 F.3d at 80. "Upon the Attorney General's certification, the employee is dismissed from the action, and the United States is substituted as defendant in place of the employee." *Osborn*, 549 U.S. at 230. "If the action commenced in state court, the case is to be removed to a federal district court, and the certification remains 'conclusiv[e] . . . for purposes of removal.'" *Id.* (alterations in original) (quoting 28 U.S.C. § 2679(d)(2)). In other words, "once certification and removal are effected, exclusive competence to adjudicate the case resides in the federal court, and that court may not remand the suit to the state court." *Id.* at 231.

In the present case, the Attorney General, through his designee, provided the requisite certification that Dr. Rahman was acting within the scope of her federal employment as an employee of the Center at the time of the incident from which the plaintiff's claim arose. (3/8/2011 Certif.) Even though this certification is conclusive for purposes of removal, it is not so for purposes of substitution. Indeed, in *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417 (1995), the Supreme Court held that, for purposes of substitution, a scope-of-employment certification is judicially reviewable. *Id.* at 434; *see also Osborn*, 549 U.S. at 246 ("[T]he

11

Attorney General's certification is 'the first, but not the final word' on whether the federal officer is immune from suit and, correlatively, whether the United States is properly substituted as defendant." (quoting *Lamagno*, 515 U.S. at 432)). But courts review such certifications "only if a plaintiff 'alleges with particularity facts relevant to the scope-of-employment issue.'" *K.R. ex rel. Perez v. Silverman*, No. 08 cv 2192, 2009 WL 2959580, at *4 (E.D.N.Y. Aug. 13, 2009) (alteration omitted) (quoting *McHugh*, 966 F.2d at 72-74).

In determining whether a defendant's allegedly tortious conduct fell within the scope of her employment, district courts look to state law. *Id.* (citing *Lipkin v. U.S. Sec. & Exchange Comm'n*, 468 F. Supp. 2d 614, 623 (S.D.N.Y. 2006)). "In New York, an employee's conduct falls within the scope of her employment if done in furtherance of her employer's work, 'no matter how irregularly, or with what disregard of instructions.'" *Id.* (quoting *Riviello v. Waldron*, 47 N.Y.2d 297, 302 (1979)). In determining whether an employee's conduct fell within the scope of her employment, New York courts consider the following five factors: (1) "the connection between the time, place and occasion for the act," (2) "the history of the relationship between employer and employee as spelled out in actual practice," (3) "whether the act is one commonly done by such an employee," (4) "the extent of departure from normal methods of performance," and (5) "whether the specific act was one that the employer could reasonably have anticipated." *Riviello*, 47 N.Y.2d at 303. "With respect to this latter foreseeability requirement, New York courts require foreseeability of general, rather than specific, acts." *Griebsch v. Weaver*, No. 7:05-CV-0958, 2005 WL 2260374, at *3 (N.D.N.Y. Sept. 16, 2005) (internal quotation marks omitted).

In *Delgado v. Our Lady of Mercy Medical Center*, No. 06 Civ. 5261, 2007 U.S. Dist. LEXIS 76269 (S.D.N.Y. Oct. 9, 2007), a case strikingly similar to this one, the district court held

12

that an employee of a federally funded center, which was a deemed PHS employee, was acting within the scope of his federal employment when he performed a surgical procedure at a private hospital. *Id.* at *9. Applying the five *Riviello* factors, the court explained that the defendant physician had treated the plaintiff in his capacity as an employee of the federally funded center and had admitted the plaintiff to the private hospital because the federally funded center "lacked the resources for the procedure [the plaintiff] underwent." *Id.* The court found that it was common practice for doctors at the federally funded center to admit patients to hospitals where they had admitting privileges when the treatment a patient required exceeded the capabilities of the center. *Id.* at *10. Performing the plaintiff's surgery at an outside facility was, therefore, not a departure from the center's practices. *Id.* Indeed, the center "fully supported and expected" that the defendant physician, practicing in obstetrics and gynecology, would need to admit and treat center patients at a hospital. *Id.* In addition, for the treatment he provided the plaintiff, the defendant physician received compensation only from the center. *Id.* The court thus concluded that the United States had to be substituted in the place of the defendant physician. *Id.*

Like the plaintiff in *Delgado*, the plaintiff here focuses on the fact that Monzon's treatment took place at St. John's, which is not a federally funded entity. As *Delgado* makes clear, however, the location of the allegedly tortious conduct is not determinative in the scope-of-employment analysis. Applying the five *Riviello* factors here, it is clear that Dr. Rahman was indeed acting within the scope of her federal employment when she treated Monzon at St. John's. With respect to the first factor—the connection between the time, place, and occasion for the act—Monzon was a patient of the Center and had received prenatal care there from Dr. Rahman's colleague, Dr. Rosita Ulep. (Rahman Decl. ¶ 3; Reyes Aff. ¶ 1.) Monzon was admitted to St. John's, as Center patients traditionally are, because the Center is an outpatient

13

clinic without the resources and equipment necessary to handle deliveries. (Rahman Decl. ¶¶ 2, 4, 5.) Dr. Rahman's association with St. John's allowed her to provide treatment to Center patients that could not be provided at the Center. (Chan Decl. ¶ 5.) Dr. Rahman admitted Monzon to St. John's because Monzon was a patient of the Center, and Dr. Rahman was the Center physician on call at St. John's when Monzon arrived on December 22, 2008. (Rahman Decl. ¶ 5.) As Dr. Chan explained, it was within the scope of Dr. Rahman's employment with the Center to admit Monzon to St. John's, where Dr. Rahman had admitting privileges. (Chan Decl. ¶ 6.)

As for the second and third factors—the history of the relationship between employer and employee as spelled out in actual practice, and whether the act is one commonly done by such an employee—on or before December 22, 2008, the Center anticipated that Dr. Rahman might need to admit a Center patient to St. John's and treat that patient there, in light of the Center's limited resources. (Chan Decl. ¶ 9.) The Center fully supported and expected that Dr. Rahman, as a Center obstetrician and gynecologist, would treat patients of the Center at St. John's. (Chan Decl. ¶¶ 7, 11.) Dr. Rahman's actual treatment of Monzon on December 22 and 23, 2008 was within the scope of her employment with the Center. (Chan Decl. ¶ 10.) And Dr. Rahman was compensated only by the Center, and not by St. John's, for the treatment she provided Monzon.[8] (Med. Billing Decl. ¶ 4; Rahman Decl. ¶ 11.)

Finally, the fourth and fifth factors—the extent of departure from normal methods of performance, and whether the specific act was one that the employer could reasonably have anticipated—also support the conclusion that Dr. Rahman was acting within the scope of her employment when treating Monzon. Dr. Rahman did not depart from her normal methods of

---

[8] The plaintiff's allegation that Dr. Rahman worked as a volunteer, with no compensation, when she treated Monzon is without any foundation in the record. (Pl.'s Opp. & Reply 3.)

performing obstetrical medicine for the Clinic, and, as previously mentioned, the Center anticipated and expected that she would need to treat her OB/GYN patients at St. John's and fully supported her doing so. Indeed, Dr. Rahman had admitting privileges at St. John's because she regularly treated her Center patients there.

It is, therefore, clear that Dr. Rahman was acting within the scope of her federal employment when she treated Monzon at St. John's from December 22 to 23, 2008. And the plaintiff alleges no facts that show otherwise. Because Dr. Rahman was thus a federal employee acting within the scope of her employment at the relevant time, the United States was properly substituted in the place of Dr. Rahman as a defendant in this suit. The FTCA thus governs this case, and the plaintiff's medical malpractice claims against Dr. Rahman may proceed only against the United States.

## II. Exhaustion of Administrative Remedies

"The FTCA requires that a claimant exhaust all administrative remedies before filing a complaint in federal district court." *Celestine*, 403 F.3d at 82; *see also McNeil v. United States*, 508 U.S. 106, 113 (1996). "This requirement is jurisdictional and cannot be waived." *Celestine*, 403 F.3d at 82. As the FTCA states:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, *unless the claimant shall have first presented the claim to the appropriate Federal agency* and his claim shall have been finally denied by the agency in writing . . . . The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a). This requirement applies to all actions, even those begun in state court. *Celestine*, 403 F.3d at 82; 28 U.S.C. § 2679(d)(4) ("[A]ny action [removed from state court

under the FTCA] shall proceed in the same manner as any action against the United States . . . and shall be subject to the limitations and exceptions applicable to those actions."). And a plaintiff must file his administrative tort claim with the relevant agency within two years after the cause of action accrues, or his claim is "forever barred." 28 U.S.C. § 2401(b).

"Although timely administrative exhaustion is a necessary prerequisite to the pursuit of a malpractice claim against the United States, the law affords some flexibility when a plaintiff who overlooks this requirement files a complaint within the prescribed time for administrative review"—that is, within the two-year statute of limitations. *Valdez ex rel. Donely v. United States*, 518 F.3d 173, 176 (2d Cir. 2008). In other words, a plaintiff's failure to file an administrative claim before the initial complaint was filed in state court is excusable if that complaint was filed within two years after the cause of action accrued. *See id.* at 176-77 (citing 28 U.S.C. § 2679(d)(5)). Specifically, Section 2679(d)(5) of Title 28 states that, whenever a claim removed from state to federal court is dismissed for failure to exhaust administrative remedies, this claim will still be considered timely if (1) "the claim would have been timely had it been filed on the date the underlying civil action was commenced" and (2) "the claim is presented to the appropriate Federal agency within 60 days after dismissal of the civil action." 28 U.S.C. § 2679(d)(5).

Here, the plaintiff concedes that she did not file an administrative tort claim with HHS, and thus did not exhaust her administrative remedies, before bringing this suit in federal court. (*See* Pl.'s Opp. & Reply 4.) This Court, therefore, lacks subject matter jurisdiction to adjudicate the plaintiff's claims against the United States, so these claims must be dismissed. The plaintiff did, however, file her state court action on December 17, 2010, which is within two years of the date of Monzon's death—December 23, 2008. *See Valdez*, 518 F.3d at 177 ("A claim under the

Federal Tort Claims Act accrues on the date that a plaintiff discovers that he has been injured."). Thus, pursuant to Section 2679(d)(5), the plaintiff's suit against the United States will still be considered timely if, within 60 days of my dismissal of her claims against the United States, she files an administrative tort claim with HHS.

Because the plaintiff failed to exhaust her administrative remedies before bringing this suit in federal court, her claims against the United States are dismissed without prejudice. The plaintiff may file a claim with HHS within 60 days of this dismissal and, if her claim is denied, bring an action in federal court within six months of that denial.[9] *See* 28 U.S.C. § 2401(b).

## III. Remaining State-Law Claims

Finally, I must address the plaintiff's remaining claims against St. John's and John and Jane Doe. Because there is no proper basis for original federal jurisdiction over these claims—which are pure state-law claims against non-diverse defendants—I would have to exercise supplemental jurisdiction under 28 U.S.C. § 1367(a). Section 1367(a) states that, when district courts in a civil action have original jurisdiction, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Although a district court has discretion to exercise supplemental jurisdiction over state law claims even when it has dismissed all claims over which it has original jurisdiction, *see id.* § 1367(c)(3), it cannot exercise supplemental jurisdiction unless there is a proper basis for original federal jurisdiction in the first place, *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996).

---

[9] As the government correctly points out, however, the plaintiff does not need my permission to file an administrative claim. *See Bueno v. Sheldon*, No. 99CIV10348, 2000 WL 565192, at *4 n.4 (S.D.N.Y. May 9, 2000).

17

Here, the dismissal of the plaintiff's claims against the United States divests this Court of original federal jurisdiction over any claim and thus precludes the exercise of supplemental jurisdiction over the plaintiff's remaining state-law claims. *See id.* at 1188 ("[A] dismissal pursuant to Rule 12(b)(1) precludes a district court from exercising supplemental jurisdiction over related state claims."); *Rodriguez v. United States*, No. 01 CV 4975, 2001 WL 1590516, at *2 (E.D.N.Y. Nov. 3, 2001) ("With the claims against the United States dismissed, the sole basis for this Court's exercise of subject matter jurisdiction over the claim against [the remaining defendant] evaporates."); *Porter v. Hirsch*, 345 F. Supp. 2d 400, 403 (S.D.N.Y. 2004) ("Dismissal of the claims against the United States dissolves the sole basis for this Court's exercise of subject matter jurisdiction over the claims against the remaining defendants."). As the Second Circuit has said, a federal court "may not exercise supplemental jurisdiction over claims unless the court has 'original jurisdiction' over at least one of the plaintiff's claims." *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 730 n.2 (2d Cir. 1993). And without original jurisdiction over any of the plaintiff's claims, I am bound to remand the plaintiff's remaining claims to the New York Supreme Court, Queens County. *See Rodriguez*, 2001 WL 1590516, at *1.

## CONCLUSION

In sum, because the United States was properly substituted as a defendant in the place of Dr. Rahman and because the plaintiff failed to exhaust her administrative remedies before bringing this suit, the government's motion to dismiss for lack of subject matter jurisdiction is GRANTED. Because the Attorney General's scope-of-employment certification is conclusive for purposes of removal, the plaintiff's motion to remand her claims against the United States is DENIED, but her motion to remand her claims against St. John's and John and Jane Doe is

GRANTED. In other words, the plaintiff's claims against the United States are dismissed without prejudice, whereas her claims against the remaining defendants are remanded to the New York Supreme Court, Queens County.

                                                                SO ORDERED.

Brooklyn, New York
January 31, 2012

                                                   *Edward R. Korman*
                                                   Edward R. Korman
                                                   Senior United States District Judge